UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

P.D.M. COMPANY, ET AL.,                                     Case No. DT 14-00552
                                                            Hon. Scott W. Dales

                Debtor.

_____/


MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge

On January 5, 2015, in Grand Rapids, Michigan, the court held a hearing to consider the Debtors' Renewed Motion for Orders: (I) Approving Sale of All the Assets of the Debtors Outside the Ordinary Course of Business Free and Clear of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. § 363(b) and (f); (II) Authorizing Debtors to Assume and Assign Certain Executory Contracts and Leases to Purchaser and (III) Granting Further Related Relief (the "Motion," DN 128), and the objections to the Motion filed by the United States Trustee and First Financial Bank, NA (the "Bank").  At the hearing, counsel for the Debtors and the Bank asked the court to rule on the Motion without taking evidence.

By way of background, in these jointly administered cases, chapter 11 debtors P.D.M. Company and Bingham Partners, Inc. seek authority to sell substantially all of their assets to Grand Traverse Band, LLC for $700,000.  The deal also includes assumption and assignment of vehicle and equipment leases.  In addition, as the Motion recites, the purchaser has agreed, as a

condition of the sale, to enter into an employment and incentive agreement with the Debtors' president, Robert G. Kelly.[1]

After listening to the arguments of counsel, including counsel for the United States Trustee, reviewing the Motion and the docket, and considering the requirements outlined in *In re Lionel Corp.*, 722 F.2d 1063, 1070-71 (2d Cir. 1983), and *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986), the court announced its decision to withhold approval of the proposed sale.  This opinion supplements the court's oral ruling.

In *Stephens Industries,* the Sixth Circuit held that a bankruptcy court can authorize a sale of assets outside of the ordinary course of business pursuant to 11 U.S.C. § 363(b)(1) only when "a sound business purpose dictates such action."  *Id.*, at 390.  As their business reason for the sale described in the Motion, the Debtors posit that the proposed purchaser, Grand Traverse Band, LLC, is most likely the only entity interested in purchasing a lumber yard operation in Northern Michigan, although they concede they have made no efforts to market the assets to anyone other than the proposed purchaser.   The Debtors also argue that because they have no hope of reorganizing, a sale of substantially all of their assets as a going-concern is the best way to maximize value for their creditors.  Implicitly, they argue that a going-concern sale is only possible in a chapter 11 case.

As for the suggestion that Grand Traverse Band, LLC is the only possible purchaser, the court is skeptical given (1) the absence of any effort to market the assets to an entity other than the proposed purchaser, and (2) the potential impact of the agreement to employ Mr. Kelly on the Debtors' decision to enter into the private sale without exploring alternatives.  *Cf. In re Embrace Systems Corp.*, 178 B.R. 112 (Bankr. W.D. Mich. 1995) (withholding approval of private sale of

---

[1] Debtors' counsel could not offer the specifics of the arrangement beyond the limited details set forth in the sale agreement, perhaps because Mr. Kelly and the purchaser may not yet have reached agreement on the terms of the relationship.

substantial assets of chapter 11 estate outside the plan process where there has been no appraisal, and no exposure to marketplace, and insider's self-interest is implicated but not fully disclosed).

As for the argument that a going-concern sale is preferable to a liquidation or dismemberment of the Debtors, the court is receptive. Nevertheless, the argument depends upon an implied premise -- that a going-concern sale is only possible in chapter 11 -- which the court does not accept.

Because any reorganization is concededly impossible and because the court has already lifted the automatic stay, the court sees no reason why the Leelanau County Circuit Court's recently-appointed receiver or a chapter 7 trustee could not effect a going-concern sale if, in their collective judgment, circumstances warranted such a sale. State courts appoint receivers precisely to preserve going-concern value. For its part, this court could authorize a chapter 7 trustee to operate the Debtors' business for a limited time "if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate." *See* 11 U.S.C. § 721. Limited operation of a business under chapter 7 in order to preserve going-concern value is almost certainly consistent with orderly liquidation of estate assets, and the approach entails the added benefit of an independent trustee, whose decision to sell the assets, even to the present purchaser, would not be vulnerable to the same criticism that undermines Mr. Kelly's decision. The court, and probably other parties-in-interest, would have more confidence in a sale under those circumstances, than a sale hastily finalized after the court's lift stay order has taken effect, and on the eve of conversion or dismissal.

Finally, because the Debtors' cases are not substantively consolidated, the allocation of the purchase price under the circumstances may have a dramatic impact on the two sets of creditors and other parties-in-interest. Yet, the only basis offered for the allocation is the agreement of the parties to the proposed sale, rather than, for example, an appraisal. Moreover,

the suggestion that much of the inventory of the operating debtor, P.D.M. Company, is on "consignment," undermines not just the allocation of the sale price, but the sale of the inventory itself.[2]

For these reasons, and those given in its oral ruling on January 5, 2015, the court is not persuaded that a good business reason justifies the transaction.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (DN 128) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Matthew L. Boyd, Esq., Troy Stewart, Esq., Michelle M. Wilson, Esq., Dean E. Rietberg, Esq., Fred Schubkegel, Esq., Mr. Patrick Patten, and all parties appearing on the court's mailing matrix for case nos. 14-00551 and 14-00552.

END OF ORDER

---

[2] At the hearing, counsel explained that the inventory is not delivered to the P.D.M. Company for sale -- the essential attribute of a consignment -- but is instead delivered to PDM for processing -- suggesting a mere bailment. Unlike a consignee, an ordinary bailee does not have authority to sell bailed goods. Without a better explanation, the court is in no position to authorize sale of any supposed inventory or the allocation of any proceeds to bailed goods.

**IT IS SO ORDERED.**

**Dated January 7, 2015**



Scott W. Dales
United States Bankruptcy Judge